UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WILLIE JAMES | CIVIL ACTION |
| VERSUS | NO. 17-6931 |
| BRIERFIELD INSURANCE COMPANY, RIEMANN FUNERAL HOMES, INC. LOUISIANA FARM BUREAU CASUALTY INSURANCE COMPANY, AND PAMELA BLAYLOCK | SECTION "N" (2) |

## ORDER AND REASONS

Presently before the Court is a Motion to Remand filed by Plaintiff, Willie James ("Plaintiff"). (Rec. Doc. 7). The motion is opposed by Defendants, Pamela Blaylock, Riemann Funeral Homes, Inc., and Brierfield Insurance Company ("Brierfield Defendants"). (Rec. Docs. 12 and 19). Having carefully considered the parties' submissions, applicable law, and the record, **IT IS ORDERED** that the Motion to Remand is **GRANTED** for the reasons stated herein.

### I. BACKGROUND

The instant matter arises out of a motor vehicle accident that occurred on US 90 in Jefferson Parish on September 8, 2016. (Rec. Doc. 1-2). On February 10, 2017, plaintiff, Willie James, filed a Petition for Damages in the 40th Judicial District Court for the Parish of St. John the Baptist, seeking damages for injuries allegedly sustained in the accident. (*Id.*). Plaintiff alleges that while he was proceeding west-bound on US 90 "a vehicle owned by Riemann Funeral Homes, Inc. and being operated by Pamela Blaylock, attempted to make a left turn then suddenly and without warning swerved into petitioner's lane of travel thereby striking petitioner's vehicle." (*Id.*). Plaintiff, a Louisiana citizen, named four defendants in his state court petition: (1) Pamela Blaylock, the allegedly negligent driver and a Mississippi citizen; (2) Riemann Funeral Homes,

1

Inc., the owner of the vehicle being driven by Ms. Blaylock, Ms. Blaylock's employer, and a Mississippi citizen; (3) Brierfield Insurance Company, the insurer of the vehicle driven by Ms. Blaylock and a citizen of Mississippi and Florida; and (4) Louisiana Farm Bureau Casualty Insurance Company, the Plaintiff's uninsured/underinsured motorist insurance carrier and a Louisiana citizen. (Rec. Doc. 1 at pp. 6-7; *see also* Rec. Doc. 1-2).

Further, Plaintiff claims that the sole, proximate and/or contributing cause of the accident is the negligence of Pamela Blaylock, who was allegedly acting in the course and scope of her employment with Riemann Funeral Homes, Inc. (Rec. Doc. 1-2 at p. 3). Thus, Plaintiff contends that Riemann Funeral Homes, Inc. is liable for the actions of its employee through the doctrine of *respondeat superior*. (*Id.* at p. 4).

Thereafter, on July 20, 2017, the Brierfield Defendants removed the action to this Court, alleging that this Court has original jurisdiction by virtue of 28 U.S.C. § 1332 because "all *properly joined* parties are citizens of different States, and the claims involve an amount in controversy that exceeds $75,000.00, exclusive of costs and interest." (Rec. Doc. 1 at p. 2). The Brierfield Defendants contend that Louisiana Farm Bureau Casualty Insurance Company ("Farm Bureau"), Plaintiff's uninsured/underinsured motorist carrier and only non-diverse defendant, is improperly joined because Plaintiff has no possibility of further recovery against Farm Bureau. In support of their improper joinder argument, the Brierfield Defendants assert that the only remaining claim[1] against the non-diverse defendant is Plaintiff's UM/UIM coverage claim that, based on Plaintiff's alleged knee, neck, and back injuries, "will not, and cannot, exceed [the] $6 million" in underlying

---

[1] In his petition, Plaintiff alleged a medical payments claim and an uninsured and/or underinsured motorist claim against Farm Bureau under policy #AT41036. (*See* Rec. Doc. 1-2 at p. 2). Plaintiff's medical payments coverage claim of $5,000.00 against Farm Bureau was allegedly paid in full. (Rec. Doc. 1 at p. 4).

2

coverage.[2] (*Id.* at p. 4). Further, the Brierfield Defendants argue that because Farm Bureau is improperly joined, its non-diverse citizenship can be ignored; thus, there is complete diversity between the properly joined parties and the federal court has subject matter jurisdiction over the matter. (*Id.* at p. 5). Accordingly, Defendants assert that "as an improperly joined party, Farm Bureau need not consent to or join in the removal." (*Id.* at p. 6).

Plaintiff then filed the Motion to Remand presently before the Court, alleging that removal of this action is not proper because it was not timely filed pursuant to 28 U.S.C. § 1446 and that there is not complete diversity under 28 U.S.C. § 1441 because plaintiff maintains the cause of action against Farm Bureau, a Louisiana citizen. (Rec. Doc. 7). Specifically, Plaintiff alleges that complete diversity is lacking because Farm Bureau was properly joined. At the time the petition was filed, Plaintiff argues that he had no knowledge of the underlying policy limits due to Brierfield Insurance Company's refusal to disclose such information. (*Id.* at p. 5).

Further, Plaintiff maintains that there is a reasonable basis of recovery against Louisiana defendant, Farm Bureau, given the uncertainty of his injuries[3] and the uncertainty regarding the extent of coverage of the Brierfield policy. Plaintiff asserts that joinder of his UM carrier is proper to provide recourse should Brierfield deny coverage: "Defendants have not and will not stipulate that this insurance applies to this accident and to these defendants because they wish to maintain the possibility of denying coverage at a later date." (Rec. Doc. 7-2 a pp. 6-7). Therefore, Plaintiff maintains that the proper joinder of his UM carrier, a non-diverse defendant, precludes complete

---

[2] Defendants contend that the 2014 Dodge Caravan driven by the alleged tortfeasor, Ms. Blaylock, was a company vehicle owned by Riemann Funeral Homes, Inc., and "a covered automobile under Brierfield Commercial Automobile Insurance Policy No. CA 0021195 5, which has a $1 million liability limit per any accident or loss….[a policy that is] further protected by National Trust Insurance Company Commercial Liability Umbrella Policy No. UMB0014433 5, which has a $5 million liability per occurrence." (Rec. Doc. 1 at p. 9).

[3] At the time the Motion to Remand was filed, Plaintiff alleged that he had "undergone a three level cervical fusion and corpectomy, and is currently scheduled for a left knee surgery. His medical care is ongoing at this time, and completely uncertain as to his required future care." (Rec. Doc. 7-2 at p. 2).

diversity of citizenship such that the matter must be remanded to state court. (*Id.* at p. 7). Finally, Plaintiff urges that "removal statutes should be strictly construed and [because] there is a substantial question of fact in this matter, remand to the State court is appropriate at this time." (*Id.*).

In opposition, the Brierfield Defendants assert that Plaintiff's Motion to Remand must be denied, arguing that the Notice of Removal was timely because it was filed within thirty days of receipt of notice that Farm Bureau had satisfied Plaintiff's medical payment coverage claim, which provided the basis for removal. (Rec. Doc. 12 at p. 3). Further, the Brierfield Defendants maintain their argument that Farm Bureau was improperly joined because there is $6 million in underlying coverage and, based on a "full quantum analysis" of Plaintiff's injuries, taking into account the highest damages awarded for similar injuries, there is no possible recovery against Farm Bureau because Plaintiff's damages cannot exceed $6 million. (*See id.* at pp. 4, 6-8).

Next, Defendants argue that, contrary to Plaintiff's assertions, they have sufficiently established the underlying coverage. (Rec. Doc. 12 at p. 4). To support this contention, Defendants reference the named insurance policies, Defendants' admission that Ms. Blaylock was acting in the course and scope of her employment, their representations of $6 million in coverage, and failure to assert defenses denying coverage. (*Id.* at pp. 4-5). Thus, the Brierfield Defendants contend that the only relevant question before the Court is "whether Plaintiff has a possibility of recovering more than $6 million in this case, i.e. whether plaintiff can recover[] from Louisiana Farm Bureau;" which, based on their quantum analysis, Plaintiff's deposition, and medical records, Defendants assert is a threshold that Plaintiff cannot meet. (Rec. Doc. 12 at pp. 5-8; *see also* Rec. Doc. 16).

4

## II. LAW AND ANALYSIS

### a. Removal

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant[s]…to the district court…embracing the place where such action is pending." 28 U.S.C. § 1441(a). If the initial pleading is not removable, "a notice of removal may be filed within 30 days of an amended pleading, motion, order or other paper from which it may be first ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446. The burden is on the removing party to show "that federal jurisdiction exists [based on the state court petition at the time of removal] and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Further, because federal courts are courts of limited jurisdiction, the removal statute is to be strictly construed; accordingly, any ambiguities or doubts should be construed against removal and in favor of remand. *See id.* A district court must remand a case to state court if, at any time before final judgment, it appears that the court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c).

In the Notice of Removal, the Brierfield Defendants claim that this Court has original jurisdiction by virtue of 28 U.S.C. § 1332. (Rec. Doc. 1 at p. 2). Federal jurisdiction exists over civil actions between "citizens of different states" when the "matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs." 28 U.S.C. § 1332(a)-(a)(1). Diversity jurisdiction requires complete diversity: "a district court cannot exercise jurisdiction if one of the plaintiffs shares the same citizenship as one of the defendants." *Whalen v. Carter*, 954 F.2d 1087, 1094 (5th Cir. 1992). Removal is available, however, if the removing defendant shows that the non-diverse party was joined improperly. *See e.g., Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568 (5th Cir. 2004) (en banc).

### b. Improper Joinder

The present issue before the Court involves the alleged improper joinder of Louisiana Farm Bureau Casualty Insurance Company, a non-diverse defendant.[4] The removing party "bears a heavy burden of proving that the joinder of the in-state party was improper….that is, to show that sham defendants were added to defeat jurisdiction." *Smallwood Ill. Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004); *see also McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005) ("The improper joinder doctrine constitutes a narrow exception to the rule of complete diversity….[and] the burden of demonstrating improper joinder is a heavy one."). "[T]he focus of the [improper joinder] inquiry must be on the joinder, not the merits of the plaintiff's case." *Smallwood*, 385 F.3d at 573.

There are two ways to "establish improper joinder:[5] (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 305 (5th Cir. 2005) (citing *Smallwood*, 385 F.3d at 573). The second is at issue in this case. Defendants' assert that due to the alleged $6 million in underlying coverage, Plaintiff has no reasonable basis of recovery against Farm Bureau. (Rec. Doc. 1 at p. 9). Thus, Defendants contend that Farm Bureau is improperly joined and its non-diverse citizenship can be ignored. (*Id.* at p. 12).

Because the Defendants claim that Farm Bureau is improperly joined under the second prong, the threshold question is whether "the defendant has demonstrated that there is no possibility of recovery by the plaintiff against [the] in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be

---

[4] There is no dispute as to the satisfaction of the requisite jurisdictional amount, the citizenship of the parties, or the diversity of the other defendants.

[5] In an *en banc* decision, the Fifth Circuit adopted the term "improper joinder" over "fraudulent joinder," but noted that the terms were substantively the same. *Smallwood*, 385 F.3d at 571, n. 1 (5th Cir. 2004).

able to recover against [the] in-state defendant." *Smallwood*, 385 F.3d at 573; *see also Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007) (There is no improper joinder if "there is arguably a reasonable basis for predicting that state law might impose liability."). In determining the validity of an improper joinder claim, the Court does "not determine whether the plaintiff will actually or even probably prevail on the merits of the claim, but look[s] only for a possibility that the plaintiff might do so." *Guillory*, 434 F.3d 303, 309 (5th Cir. 2005).

This determination may be made in one of two ways. The court may conduct a Rule 12(b)(6)-type analysis, which involves review of the complaint to determine whether the complaint states a claim against the non-diverse defendant. *Smallwood*, 385 F.3d at 573. "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Id*. In rare cases, however, if the "plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder…the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* In determining the validity of an improper joinder claim, the court "must evaluate all of the factual allegations [and ambiguities in the controlling state law] in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff." *Guillory*, 434 F.3d at 308 (citation omitted).

### c. Claim Against Uninsured/Underinsured Motorist Insurer ("UM")

Inherent in the improper joinder analysis is whether Louisiana state law provides the plaintiff with a possibility of recovery against the alleged improperly joined defendant, Farm Bureau. Louisiana statutes and jurisprudence indicate a strong public policy in favor of UM coverage. *Hotard v. State Farm Fire & Cas. Co.*, 286 F.3d 814, 819 (5th Cir. 2002). "The object of UM insurance is to provide full recovery for automobile accident victims who suffer damages caused by a tortfeasor who is not covered by adequate liability insurance." *Duncan v. U.S.A.A.*,

950 So. 2d 544, 547 (La. 2006). Under Louisiana law, a solidary obligation exists between UM insurers and tortfeasors, arising "either when the tortfeasor is uninsured or when the tortfeasor's liability coverage is less than the amount of damages sustained by the tort victim." *Fertitta v. Allstate Ins. Co.*, 462 So. 2d 159, 162 (La. 1985). "The obligation of the UM carrier is secondary to the obligation of the tortfeasor's liability insurer;" thus, to recover against a UM insurer, "a plaintiff must prove the alleged tortfeasor's lack of insurance." *Allen v. Occidental Fire & Cas. Co.,* No. 11-2806, 2012 WL 1118764, at *2 (E.D. La. Apr. 3, 2012) (citations omitted).

### d. Discussion

Referencing the foregoing legal principles, while the Court finds the Notice of Removal to be timely, Defendants have fallen short of carrying their *heavy burden* of persuading the Court that Farm Bureau was improperly joined. Resolving all issues of fact in favor of Plaintiff, the Court cannot definitively find that there is no reasonable basis to predict that Plaintiff might be able to recover against Farm Bureau. *See Bingham v. Wilson*, No. 08-3593, 2008 WL 4286841, *3 (E.D. La. Sept. 16, 2008) (Plaintiff has a reasonable basis for recovery against his uninsured/under-insured motorist insurer if coverage under defendant's insurance policy is not established or if the damages exceed the limits of the underlying coverage).

The evidence, taken as a whole, indicates that there is a question of fact as to the extent of Plaintiff's damages, as well as to the extent that the Plaintiff's claim is covered by the underlying coverage. In his petition, Plaintiff alleges that the following injuries were sustained as a result of defendants' negligence: "past, present, and future medical expenses; past, present, and future mental anguish; past, present, and future pain and suffering; wage loss; property damage; transportation expense; loss of use; loss of enjoyment of life; and loss of earning capacity." (Rec. Doc. 1-2 at p. 4). Defendants contend that Plaintiff's "alleged injuries are not catastrophic" and

that it is mathematically impossible for Plaintiff's damages to exceed the $6 million in underlying coverage. (Rec. Doc. 19). Although there is a dispute regarding the extent of Plaintiff's injuries, the Court finds the issue of coverage the most problematic.

Specifically, the Court is not convinced that the Brierfield Defendants have established that the Brierfield Commercial Automobile Insurance Policy and National Trust Insurance Company Commercial Liability Umbrella Policy, issued to Riemann Funeral Homes, Inc., will undisputedly provide coverage for Plaintiff's damages. There is no such stipulation before the Court. At this stage of litigation, the Court is not persuaded that Defendants have shown that there is no possibility that Plaintiff can recover from Farm Bureau. The attached policies, which contain numerous exclusions and limitations, are insufficient to show that the Defendants' policies will cover all damages to Plaintiff, such that there is no possibility of recovery from Farm Bureau.

The Brierfield Defendants state that the vehicle driven by Ms. Blaylock was a company vehicle owned by her employer, Riemann Funeral Homes, Inc., and a covered automobile under the Brierfield Commercial Automobile Insurance Policy. However, this alone does not sufficiently indicate that Plaintiff's claim is covered by the referenced policies. In their answers to interrogatories regarding coverage, the Defendants refer to the policies themselves, which include numerous limitations and exclusions. (Rec. Doc. 1-10 at p. 3-4). It is plausible that Plaintiff may have a claim against Farm Bureau to the extent that the aforementioned policies do not cover some or all of his damages because of such policy exclusions or policy coverage provisions. *See Vatter v. Walker*, No. 17-171, 2017 WL 3498868, slip op. at *4 (M.D. La. July 10, 2017) (finding that Defendants failed to show that there was no possibility of recovery from Plaintiff's uninsured/underinsured insurer because, *inter alia*, the employer's $50 million in insurance coverage was subject to terms, limitations, and exclusions: "Defendants disregard the possibility

9

that coverage may be excluded on one or more of the applicable policies which would potentially trigger the coverage of Allstate…." ); *see also Garner v. Hyken*, No. 10-4135, 2011 WL 1002098, at *4 (E.D. La. Mar. 18, 2011).

Additionally, while no coverage defenses have currently been asserted, this does not preclude Defendants from asserting a coverage defense as the litigation progresses. (*See* Rec. Doc. 1-10 at p. 5) ("Defendant [Brierfield Insurance Company] is not asserting any defense denying coverage to Pamela Blaylock and Riemann Funeral Homes, Inc. *at this time.*") (emphasis added). Moreover, although the Brierfield Defendants admitted that Ms. Blaylock was acting in the course and scope of her employment at the time of the accident, the Defendants have not admitted that her employer is vicariously liable to the Plaintiff. To the contrary, in their answer to Plaintiff's petition, Defendants deny that Riemann Funeral Homes, Inc. is liable for the actions of its employee through *respondeat superior.* (Rec. Doc. 7-15 at p. 3). To the extent that the aforementioned policies do not cover Plaintiff's damages, for any reason, Plaintiff may have a claim against Farm Bureau as his uninsured/underinsured motorist coverage carrier.

In *Tureaud v. Kephart*, the Court found that that the removing party had not met its burden of showing that plaintiff had no possibility of recovery against her uninsured/underinsured provider, State Farm. *Tureaud v. Kephart*, No. 09-7269, 2010 WL 1254372, at * 3 (E.D. La. Mar. 24, 2010). Although the employer claimed its policy limit was far in excess of plaintiff's claim, the insurer did not admit or stipulate that its policy will cover plaintiff's claim. *Id.* Rather, the employer's insurer admitted that it may have issued a policy to the employer that was in full force and effect on the date of the accident subject to all terms, exclusions, and limitations contained

therein. *Id.* Consequently, the Court found that State Farm was not a nominal party.[6] *Id.* This Court agrees with Judge Africk that a liability insurer cannot have it both ways: "It may not argue on the one hand that plaintiff has no possible claim against [the uninsured/underinsured motorist carrier] because the limits of its own policy will clearly cover any damages to plaintiff, while arguing on the other that its policy may not cover plaintiff's claim at all." *Id.*

Moreover, at the time the lawsuit was filed—five months after the accident and the initial request for a copy of the declarations page—Plaintiff was not provided with the insurance policies, thus had no knowledge of Defendants' underlying limits. Plaintiff's lack of knowledge of the underlying policy limits tends to negate the contention that Plaintiff improperly joined Farm Bureau in order to defeat removal.

Accordingly, resolving all issues of fact in favor of Plaintiff, the Court finds that the Brierfield Defendants, the removing parties, have failed to meet their burden of demonstrating Plaintiff's inability to establish a cause of action against Farm Bureau. Therefore, Farm Bureau's Louisiana citizenship is relevant in the Court's determination of its jurisdiction. Plaintiff and Defendant, Farm Bureau, are both Louisiana citizens. Without a showing of complete diversity between Plaintiff and Defendants, this Court lacks subject matter jurisdiction and must remand the case to the 40th Judicial District Court for the Parish of St. John the Baptist, State of Louisiana.

### III. CONCLUSION

Accordingly;

---

[6] "[T]he analysis for whether a party is nominal is the same analysis for whether a party is improperly joined." *Veritas Consulting Grp., Inc. v. Gasbuddy Org., Inc.*, 10-147, 2010 WL 2598386, at *2 n. 2 (S.D. Tex. June 24, 2010).

**IT IS ORDERED** that Plaintiff Willie James' Motion to Remand (Rec. Doc. 7) is **GRANTED**, and the matter is hereby **REMANDED** to the 40th Judicial District Court for the Parish of St. John the Baptist, State of Louisiana.

New Orleans, Louisiana, this <u>6th</u> day of December 2017.

                                                  **KURT D. ENGELHARDT**
                                                  **UNITED STATES DISTRICT JUDGE**